The case today is Berry v. LexisNexis and the first lawyer is Mr. Paul. Mr. Paul, we're pleased to hear from you, sir. Good to have you here. Thank you, Your Honors. May it please the Court. This case involves an abuse of the class action device of truly historic proportions. The district court below certified a class that encompassed 200 million people, essentially every adult living in all 50 states, Puerto Rico. Including the members of this panel. How do you deal with that? Everybody in this court. The class definition does exclude judiciary handling the case. It doesn't? No, it doesn't. Oh, it does not? Well. It says it excludes the presiding judge and his staff. I think it's on page 15 of the settlement agreement. I was going to raise that. You walked right into it. How do we deal with that? Can you interpret the presiding judge and his staff as being the appeals court judges? I do think you can make that interpretation. I do think that the class definition is overbroad, which is one of the arguments we've made. This is just a different iteration of the overbreadth of this class. But you agreed to the thing, didn't you? Or you challenged it? No, we challenged everything about this. They're going to have to. It was approved. Over our objection, Your Honor. Over your objection. You didn't object on that basis, though. Not on the judiciary aspect of it. We objected on the overbreadth of the class. So, I mean, could you all amend it today and agree that we can hear it? There's no opt-out provision, so we can't opt out. And that is really— If you've got any suggestions on how we deal with it, I won't charge this time against you. You can help us out. Well, I think the—I don't have a suggestion for Your Honor on that. Excluded from the settlement class are counsel of record and their respective law firms, or any of the parties, and the presiding judge, the presiding judge, who here was Judge Spencer, in the action, and his staff, and all members of their immediate family. So that's what we have to deal with. Anyway, you go ahead with your argument. Let me say this, Your Honor. To the extent that that is yet an additional conflict in this class— That's 4.11. Last definition on page 15. On behalf of the objecting parties, I'm willing to waive that conflict because I would hate for this court to send this back down on that issue and come back up on the true issues in this case, which are the non-opt-out provisions of this settlement. Your Honors, there really is no fair reading, I don't believe, of the Walmart v. Dukes decision that allows this settlement to stand. And I particularly want to emphasize the point that while there was a divided court in Dukes, the unanimous portion of Dukes is what strikes this class action down. Ms. Aaron is one of the objectors in this case, and her claim for up to $1,000 in statutory damages was released through this class action settlement. And she would like to pursue that on her own. And the defendants and the plaintiffs got together and decided that their agenda of reformulating LexisNexis's future conduct was more important than her property right, her claim for damages. And so they extinguished it in exchange for injunctive relief that she wasn't asking for. And doing that without her consent is a violation of both due process and the structure of Rule 23 itself. And that's the point that the Dukes court takes great pains to make, and I think there are so many parts of the Dukes decision that forbid the conduct that occurred here. One provision I'd like to highlight from the Dukes decision is the court's finding that it is improper to use class certification under subsection B2 if, and this is a quote, individual class members' compensatory damage claims would be precluded by litigation they had no power to hold themselves apart from. That possibility underscores the need for plaintiffs with monetary claims to decide for themselves whether to tie their fates to the class representatives or go it alone, a choice that Rule 23B2 doesn't permit. Just to make sure I understand, someone would still be able to pursue actual damages, correct? I don't draw the distinction between actual damages and statutory damages under this context because this court has held in a related statute that statutory damages are presumed actual damages. So they are still, in the words of Dukes, compensatory damages. They are not punitive damages. Those are also, they were separately waived, but we are talking about statutory damages which are compensatory damage claims. And so they still, even though there's this reservation or carve out for actual damage claims, many class members can't prove up actual damages and that's why the statutory damage exists is because of the difficulty of proof of actual damages. Can I ask you sort of a broad question and I really am hoping you can explain this to me. So in your theory as you just described it, when would a mandatory B2 class be okay? Doesn't it always sort of, even if they're seeking only injunctive relief, they haven't waived any monetary claims, I mean if the class loses on the merits, one of these kind of mandatory class members is going to be collaterally stopped from bringing a damages claim or at least there's a risk that he or she will be so. Does it follow from your theory that there really can be no such thing as a mandatory class? No, I think the dichotomy that the Supreme Court has drawn is between collective rights and individualized rights. And in the context of declaratory relief or injunctive relief, there is this collective right. But still, if the class loses on the merits, right, like in your classic B2 sort of desegregation case, they just lose on the merits. There's no segregation going on here. No class member is going to be able to turn around and bring a 1983 suit for damages, right? It is unlikely. The effective offensive use of collateral estoppel is not all that broad. Right, but at least at risk. Certainly it is at risk. So it just seems like the logic of your theory pushes us to a place we don't want to go, which is there can be no such thing as a mandatory B2 class. No, I think it's actually the opposite, which is there are, in effect, cases where one person litigates the collective right without pursuing the class remedy, but they are, in effect, litigating a class remedy. And the fact that they don't pursue it as a class doesn't mean that they're not litigating other people's rights. In those cases where offensive collateral estoppel or res judicata would apply to others' claims. But the pursuit of individualized damage claims is a much different creature. Right, but then that's where I felt like the district court was like, well, the good thing is nobody is pursuing individualized damages claims here. All of those actual damages claims have been reserved. So we're totally fine with Dukes. So what's wrong with that? It is drawing that false distinction between statutory damages and actual damages. The statutory damages exist for the very reason that it is difficult for many people to prove up actual damages. They are still compensatory damages. They are not punitive damages. They are compensatory damages. They're just presumed actual damages because of the difficulty of proving the harm in a privacy case. They may be, in that sense, compensatory, but they're still class-wide, not individualized, right? They turn on the action of the defendant and whether it was willfully undertaken. And that's just like one class-wide answer, right? I don't agree with that, Your Honor, and here's why. It is possible that ultimately the willfulness finding that would be at issue to get statutory damages is a jury question. And so it is feasible that Ms. Aaron tries her case in her home state of Nevada and a jury finds that the defendant's acted willfully and she obtained statutory damages. And it's equally plausible that a plaintiff filed suit in Virginia and the jury finds no willfulness. And those aren't necessarily, that offensive use of collateral stuff was not going to apply in that context to prevent that jury from making a different finding than is found in another case. And that is at issue in a lot of the class certification decisions that have primarily come out of the Seventh Circuit dealing with the nationwide class problem. And Judge Posner finds it's not a bad thing to find that it's a breach of a standard of care in one state and not a breach of the standard of care in another. And it's okay to have state juries making different decisions. And that's the problem that Judge Posner found with the nationwide class. And that is the same issue here. There's not automatic offensive use of collateral estoppel to prevent juries from making different findings. I agree there's some efficiency in it. But, you know, the court has been clear in its restriction on the right to pursue nationwide classes. And in this case, it is still a property right. And if somebody wants to, in the words of Dukes, go it alone, they have that right. And that is, you know, the pithy phrase from our brief, my neighbor can't sell my house even if the foundation's weak and they get a good deal for me. They can't do it without my consent. And that is, I think, the framework that the Supreme Court has set forth in not just Dukes, but in the Schutz case, in the Thai Court title case. And I would point out the effort to buy peace here in the structure of the settlement isn't effective at all anyway. In the Ninth Circuit, the Brown v. Thai Court title case, the court dealt with a settlement achieved within an MDL that waived damage claims, compensatory damage claims, and obtained an injunctive relief. And the court found we're not going to enforce res judicata against the release of those damage claims because they weren't the MDL plaintiff's property to sell. Is this a bit of an outlier? No, I think it's fully consistent with Dukes. In fact, if you read Dukes, they don't reach that ultimate decision of can you ever resolve monetary damage claims in a B-2, but they go to great lengths to suggest how they would rule if faced with that question. And the Ninth Circuit has answered that question. Ms. Aaron happens to reside within the Ninth Circuit, so she has the right to go file that case within the Ninth Circuit and say there's no res judicata effect on this release and this settlement. I think the Sixth Circuit has done the same thing in the Enright Electronics case. I think that the Seventh Circuit has done the same thing in the Jefferson case, both of those being in the B-1 context. Well, then what's the problem? The problem is this settlement should have never been approved. But the due process problem just went away, right? All these people fortunately reside in circuits where they are not, in fact, bound to this. But we will have created a situation where Ms. Aaron can pursue her claim because she's in the Ninth Circuit, and if this court doesn't reverse the district court's order, any plaintiff, any class member residing in the Fourth Circuit will not be able to pursue their claim. And that is the type of circuit conflict on which the Supreme Court would have to resolve, clearly, but it isn't a level playing field for the B-2 class members in this case. The justification that the defendants and the plaintiffs use here, I think they acknowledge, and here is really the fundamental problem. There is a separate B-3 class here, 31,000 people approximately, and they received money for their statutory damage claims and their actual damage claims. And because they received money, they received the right to opt out. They were placed within a B-3 class. And their logic goes, well, because the B-2 class did not receive any money, they don't get the minimal structural assurances of fairness in B-3. They have to be in B-2 and they cannot opt out. And the rule of law, thus, is if you get a dollar because you get money, you get due process, you get B-3. But if you don't get anything, then you get less rights. It's a less recovery equals less rights. It makes zero sense in the structure in which they've put this forward. It is an admission by structuring the B-3 class as a B-3 because they got money. That's the only difference between those classes. They were all originally pled as B-3 classes. And the plaintiffs and defendants asked the court to engage in a fiction that there's no damage claims here. We're not wiping out damage claims because or not they don't say we're not wiping them out. They say there's no damage claims at issue in the case because they're not getting money. Well, because that's the deal you made for them. But, of course, in the complaint, it's the only relief afforded. And under the statute, it's the only relief afforded. Just to make sure I understand, the B-3 folks include people who did something, correct, took some affirmative step. Correct. Either requested their files or they took some dispute. And isn't it reasonable that they would get sort of a different or, for lack of a better word, better deal than the B-2 folks? Sure. There's an argument that you can get a better deal, but it's still in the… In terms of it being fair and reasonable. Well, not in terms of being fair and reasonable. Look, the difference, the fact that it can be a different result, I understand and I don't argue with that. But the fact is they get due process and the other group did not. And had they gotten a dollar in that negotiation, they would have gotten due process. But because they got zero dollars, they got nothing. And the argument is they got the injunctive relief, but they still gave up something for that injunctive relief. And so this fiction that there are no damage claims in the case because they waived them isn't true. This court held in Lukinas that you need to look at the complaint. The prayer for relief is solely for money damages here. The statute only provides for money damages. And they made a deal that may be fair to some people. Some people in the B-2 class may say, that's a good deal and I'm willing to take that. I'm willing to trade my damage claim for injunctive relief. But others may not want to make that deal. And that's their due process right, to opt out and in the words of Dukes, go it alone. The last point I want to quickly make is there are additional cases from the Fifth Circuit, the Seventh Circuit and the Eleventh Circuit that have held that if there's not injunctive relief provided for under the relevant statute, that it is an abuse of discretion to certify the class under B-2. And here the District Court did certify it under B-2, even though the Fair Credit Reporting Act does not provide for injunctive relief. Do all of those cases involve settlement agreements where the defendant has consented to the relief? They are not in the settlement context, which the plaintiffs and defendants point out as a relevant distinction. But the Amchem Court makes clear from the Supreme Court that in the settlement context, class members get heightened due process rights, not less rights. So the fact that the parties are agreeing to it is irrelevant. The court's obligation to protect absent class members is heightened in that context, not lowered. That point is relevant to the idea that you can give injunctive relief despite the fact that it's not actually under statute. Because it's a settlement agreement. Correct. And we don't dispute that they could have negotiated for it and they did negotiate for it. They have that right. Our point is because money damages were waived in exchange for that injunctive relief, you must have the right to opt out and go it alone. Thank you. You're also challenging the fee award. I do. Thank you, Your Honor. I do need to mention that quickly. I do speak for all of the objecting parties here today. I personally did not make that objection, but Mr. Shulman did make that objection. It's in your brief. And it is in the brief. We joined together for purposes of the appeal, Your Honor. I think the point there is simple. He made objections. And this court has held on repeated occasions that when an objector makes specific objections here to a fee application, it is the district court's obligation to make relevant findings of fact that can be meaningfully reviewed on appeal. And here there's not really a record addressing his specific objections to the hourly rates, to the load star, to the allocation between the B-2 and the B-3 for this court to engage in meaningful review. And the failure to do that is an abuse of discretion. Thank you. Thank you. Mr. Wilkins? My name is Billy Wilkins, and Mike Cadell and I represent the plaintiff appellees. At the council table with me is Joe Palmore. He represents Lexis, and he will follow me in just a few minutes. The plaintiffs brought this lawsuit seeking several things. They wanted certification. They wanted a determination that the accurate for collections report was covered by the FCRA. Number three, they asked for actual damages, if any existed, based upon negligence. Number four, they sought reimbursement of costs. Five, they sought attorney's fees. And six, they asked for money based on willful compliance, which after all the evidence was in, the district court held this would have been uniform to all class members and not individualized. Well, the court approved settlement in essence gives the class members one and two and three and four and five. What the plaintiffs waived were remedies based upon noncompliance, but in reality they gave up almost nothing. I say almost because in litigation, as the court well knows, nothing is ever in the for sure category. Forty years ago when Flynn v. MFG, this court, in a class certification case, stated that in examining a class action settlement, I quote, the most important factor for this court to consider in determining whether there has been a clear abuse of discretion by the district court in approving the settlement is whether the district court gave proper consideration to the strength of the plaintiff's claim on the merits. Well, the district court properly discharged its responsibilities, and in the end, it concluded that the plaintiff's claim for willful noncompliance was, and I quote, speculative at best. Here's what the district court well understood. In bringing an action seeking a remedy based on willful noncompliance, the plaintiffs would have to prove first that Akron for collections was covered by the FCRA. Two, they'd have to prove that a violation occurred. Three, they'd have to prove that this violation was willfully committed. And finally, they would have to successfully climb a very, very steep hill. They would not be entitled to a single dime unless Lex's interpretation of the Fair Credit Act was reasonably, was objectively unreasonable. This is so even if it turns out that Lex's interpretation was erroneous. Just as the Supreme Court said in addressing a similar issue in Safeco. So even if they have a tough road to hoe on that, shouldn't the objectors still have the right to take it on if they choose to? I'm sorry, Judge? Even if we assume that they would have had a really tough time establishing willfulness for the purposes of getting statutory damages and that it would have been really difficult for them to achieve that, shouldn't they still at least have the right if they choose to to opt out and pursue that? Not if the damages were incidental to the injunction of relief. And as the District Court held and the Second Circuit recently held, damages were incidental if they flowed directly from liability established and they flowed directly to the class as a whole and are not individualized. Can you view something as incidental if it's the only relief really sought in the complaint? Well, you don't look at the complaint. You do in litigation where the parties have to object to each other and the judge or the jury makes the decision. This is a settlement, and that's a whole different ballgame. Settlement is this was hammered out over a two-year period, two judges assisting with another mediator assisting in multiple hearings, multiple mediations, multiple settlement conferences, and they hammered this thing out and went before the district judge, had a full-blown hearing, and he issued a 26-page order approving the settlement. And that's where we stand now. The cases that the plaintiffs are citing deal with cases where there has not been a settlement, where there's been litigation, injunctions were imposed over the objection of defendants. That's not the case here. And you can settle a case under any terms as long as it's fair and reasonable, as you pointed out, Judge. And this case is fair and reasonable. The District Court thought it was. And I challenge anybody to prove that this was a broad and clear abuse of discretion by the district judge. I might add to that, when this case was filed, there was a question about what the FTC did in 2008 dealing with Akron Reports. Well, the District Court answered that question on page 24 of his order. He said this, the FTC in 2008 voted unanimously that Akron for Collections Reports do not fall within the FCRA and do not involve credit reports. Now, the objectors have never claimed in their briefs, certainly before this court, that this finding by the District Court was clearly erroneous. So it is the law of the case. And it strengthens their position that willful noncompliance could never be established from a practical standpoint. So in reality, the class members gave up the right to seek a remedy that was speculative at best, and in exchange they received significant value. Now, Professor Richards, nationally known expert in the field of privacy law, in his expert opinion said real meaningful value was given to all of the class members. Professor Mullenix said in her opinion this structure, this settlement, was proper in every respect. Now, this expert testimony was not contradicted because the objectors offered none. And all of this coupled together with the fact that it has been pointed out, these class members reserved the right to seek actual damages. Now, the plaintiff brought up the fact that the objectors posed a hypothetical, equating someone's house to a claim for willful noncompliance. What the objectors failed to point out is that if someone comes along, and what they do point out, they say if someone comes along and says, Wilkins, we're going to sell your house, I should have the right to object. That is opt out. But what they failed to point out is that before a house can be sold, it has to exist. So nobody can sell my house if I don't have a house in the first place, just as the objectors don't have a realistic remedy based on willful noncompliance. So what they gave up in this settlement, they really never had in the first place. But importantly, if I did have a house and I was damaged, I have every right under this settlement agreement to seek and obtain actual damages. Now, I recognize this hypothetical posed by the objectors is perhaps a little silly. But when you think about it, when you examine it, it makes our case, not theirs. If no one has no further questions, I'll conclude. I've got a couple of questions. All right, sir. What would you do about the fact that members of this panel are within the class, the B2 class? Well, I would offer that we are willing to agree at this moment that the language you read out, Judge King, can be interpreted to mean any presiding judge. That's the best I can offer, and I assume my colleagues would agree with me as well. Maybe any judge. Any presiding judge. Maybe any judge rather than presiding judge. It may be any judge or justice. If it could go to the Supreme Court, why wouldn't you? But it seems to me that's pretty narrow. Well, I'll accept your suggestion, Judge. I think you all may need to think about it. We certainly need to think about it too, but the way it's written there, it's pretty narrow. And the next thing, what about the attorney's fee issue? The explanation was pretty sparse. Well, you know, again, we go back to—  Where were the rates based on, New York or Richmond? Well, I think they were based on—we've got lawyers involved from all over. Are they supposed to do Richmond rates or Fourth Circuit rates? I don't know the answer to that, perhaps. But that's a concern. Well, this, again, is part of a settlement that was having— Where did that multiplier come from? No, the judge had to find all that. That's right. No, this was the judge had to approve. There was a settlement, and then the petition for fees, and the judge explained it in one paragraph. And he came up with a multiplier of 1.99. Yes. And he didn't explain where he got that multiplier. You all say in the brief, or one of the briefs says it, you can get that from experts and things that are somewhere in this record, but Judge Spencer didn't say where he got it, I don't think. But anyway, that's—I just was— Well, they were— I'm just concerned whether that's enough of an explanation. I think it's enough, plus the fact they reduced their— what they were seeking from 30 percent to 25 percent, in essence. The money that's being paid is not coming from the— That's right. Are not coming from recovery of the class. Of course, there isn't any recovery of the class. But now on the other class, that's not even on appeal. You've got— B-3. You've got $3.5 million or something, and this is $5.5 million that's still lurking out there. It's in disappeal. That's right. Well, there's no objection to the three— Well, I know there's no objection, and it's being paid by LexisNexis, but the question is whether the opinion satisfies our precedent. Well— That's what I'm getting at. I understand where you're going, Judge. But I think we just take an overall view and look at the magnitude of this case. It went on for five or six years. This one case took two years of negotiations multiple times all over the country. And so we've got a big case here, and the parties agreed that this was a reasonable attorney's fees, and the judge accepted it. That's about—that's the only explanation I can give. But, again, we— Go ahead. I'm sorry. That's it. I've finished. Very good. All right. Thank you, Judge. Thank you, Mr. Wilk. Thank you. Mr. Palmore. I mispronounced your name. I'm sorry. Thank you. Palmore, Judge King. So I'm Joseph Palmore here on behalf of the defendant appellees, which I'll collectively call LexisNexis. The settlement in this case provides significant long-term consumer benefits through industry-leading product changes in return for the compromise of a limited set of statutory remedies that plaintiffs almost certainly could not have secured through litigation. At the same time, the settlement preserves the right of B2 class members to pursue actual damages claims for any individualized injury. This hard-fought settlement is fully compliant with all requirements of Rule 23 and due process. I'd like to start with the point that Objectors' Counsel devoted much of his time to, the question of whether it was appropriate to release the class's statutory damages remedies through a B2 settlement. And I think it's important to separate out two separate arguments that Objectors are making. Their principal submission is that no claim for monetary relief can ever be certified under 23B2. No court of appeals has ever adopted that rule. To the contrary, every court of appeals to have considered the question has held that non-individualized monetary remedies can be provided as part of a B2 class. And those non-individualized remedies flow directly from a finding of liability on the part of the defendant. And the Supreme Court in Dukes went out of its way to emphasize several times that it was not rejecting that rule. And after Dukes, the Seventh Circuit in Johnson, in an opinion written by Judge Posner, and the Second Circuit in Amara have held, again, that non-individualized damages can be certified under Rule 23B2. So what Objectors are asking this court to do is to go out in front of the law to create a circuit split to be the only court of appeals to ever hold that as a categorical matter, non-individualized damages cannot be afforded under Section 23B2. I would suggest that would not be an appropriate thing for this court to do, and I think that would be wrong. Because 23B2 certification is appropriate when the relief awarded is unitary and indivisible. When all members of the class receive the same remedy, determined entirely by the defendant's conduct, not by an individual's plaintiff's particular circumstances. The unitary injunction agreed to in this settlement is an example of such a remedy, but it is also settled law, as I said, that non-individualized monetary relief can satisfy that standard too. Class members who are in exactly the same position as every class member with respect to their entitlement to relief, whether injunctive or monetary, do not need the right to opt out. Objectors' backup argument, or second argument, is that even if non-individualized monetary relief can be provided under Rule 23B2, that the release here is impermissible, because class members' statutory damages claims are individualized, and that's wrong also. Under the statute, any plaintiff with an individualized claim to harm can seek compensation through recovery of actual damages with no cap. That remedy was specifically carved out of the release under this settlement. Any class member who can show concrete and individualized harm, any class member who has a house, as Judge Wilkins said, can pursue that claim and try to recover. Those claims to individual relief are, in a sense, opted out of the very structure of this settlement. There really aren't any claims here for actual damages, right? I mean, I haven't heard anything about what actual damages anyone would have. So it seems like the only real chance of anyone getting any monetary relief would be through the statutory damages that they've now been given away. Well, I respectfully disagree, Judge Hazel. I mean, we talked about the B3 class members, and those are people who took some action in the real world, reflecting a view that the accurate reports were, in fact, consumer reports. Right, I get that. That's why I'm referring to the B2 class in terms of not having. One can imagine a B2 class member who said, you know, I was harassed by a debt collector who was calling my number erroneously, and that's because the information in the report was incorrect. And maybe they would have a claim to actual damages, and they can bring that claim. There's nothing in this settlement that bars that claim. Any individualized relief can be awarded,  How do you respond to the argument that, no, no, these damages, the statutory damages are individualized because there's always the chance that if there weren't a mandatory class, people could go out across the country, fan out across the country, and get inconsistent verdicts on willfulness? I don't think that's what individualized means, Judge Harris. I think individualized means is there something particular to a plaintiff that would lead to a different outcome, not that you could roll the dice in different proceedings and get a different outcome in different parts of the country. And here, the fundamental issue in the case from the beginning was, are these reports consumer reports for purposes of the FCRA? That was a global issue. And the corollary to that was, was LexisNexis willful in not treating them as consumer reports? That also, under the particular circumstances of this case, was a global, indivisible, class-wide issue. So we think that it was appropriate here to, that any statutory damages that could have been awarded under the particular circumstances of this case would have been non-individualized, and then the release, therefore, as part of the B2 class is appropriate. I'd like to also address the fairness inquiry that Mr. Wilkins touched on, because contrary to objectors' arguments, the settlement here is fundamentally fair, and the district court plainly did not abuse its broad discretion in approving it. This court has said that the most important factor in evaluating the fairness of a settlement is the strength of the plaintiff's claims. And here, as Judge Spencer recognized, the claims were very, very weak. The only way the class could have received statutory damages in litigation would have been through a showing not only that LexisNexis violated the statute, but also that the violation was willful. Under the Supreme Court's Safeco decision, this is like a qualified immunity test. You have to violate clearly established law. Your conduct has to be objectively unreasonable. And the defendant, so the defendant must have violated, if the statute's very clear on a question, and I would submit that the FCRA is not very clear on very many questions, then it's possible the willfulness standard can be satisfied. If there's a definitive statement from controlling authority, like a court of appeals or the FTC prohibiting the defendant's conduct, it's possible that conduct would be willful. In this case, as the district court found, plaintiffs could not have established willfulness under the Safeco standard. Neither plaintiffs nor objectors have pointed to any controlling authority stating that accurate reports or reports like them are consumer reports for purposes of the statute. To the contrary, the FTC unanimously held that accurate reports are not consumer reports under the statute. As Mr. Wilkins said, the district court noted that, that that was the basis for the FTC's finding, and the objectors have not made any effort to show that the district court's finding in that regard was clearly erroneous. In return for compromising these very weak claims for statutory damages, the class received what the district court also found, as a matter of fact, was industry-leading injunctive relief that fundamentally reforms the products at issue. The class will receive all the protections of the FCRA for LexisNexis' new collections decisioning product and a number of significant and unprecedented FCRA-like protections for the new contact and locate product, even though that product is not even arguably covered by the statute. These reforms are much more valuable to the class than a nominal cash payment would have been. Indeed, in unrebutted evidence, Professor Richards, who Mr. Wilkins mentioned, put the value of the injunctive relief to the class in the billions of dollars. The right to receive a copy of a report annually is alone worth $160 million. So that's a concrete, real-world benefit that plaintiff class received through this settlement that you can actually put a dollar figure on. For all these reasons, the district court acted well within its broad discretion in approving the settlement, and we would respectfully ask the court to affirm. I'd be happy to answer any remaining questions the court has. What's your position on whether the judges have been within the definition of the class? These judges. Your Honor, we agree with Mr. Wilkins that the agreement between the parties is certainly amenable to the reading that the presiding judge would mean any presiding judge who's presiding over the cases. That would include the three of you. We're just qualified based on what our spouses may be, you know, interested, may have or something, too. Well, I think you would be treated the same way that Judge Spencer was treated. So you would be considered a presiding judge for purposes of the settlement agreement. And any other judge that ever gets involved? I think that would be, that interpretation would be ongoing, Your Honor. And you all didn't brief anything about the legal fees. You're staying out of that? We did not. We've contractually agreed to the fee amount. You don't have any position on that right now? Well, we contractually agreed to support the fee application, which we did through making confidential information available to Professor Richards and the other experts to assess the value of the injunctive relief so that plaintiffs could make their showing that the value of the injunctive relief that they secured on behalf of the class was significant. Thank you very much, sir. Mr. Paul, you've got a few more minutes. Thank you. To the extent that damage claims can be resolved in a B-2 class post-Dukes, the Supreme Court made clear that, at the very least, they must be incidental to the injunctive relief. And the court defined what incidental means. It said that those damages must flow from the issuance of the injunction or declaratory relief. And in that regard, while the court goes on to, I think, question whether they would even allow the incidental damages, to the extent that that exists, the Johnson case that the plaintiffs and defendants rely on, I think is a great example of those types of incidental damages. In that case, there was a question about how benefits in a pension plan were defined. And the court issued declaratory relief, defining how those benefits, changing how those benefits should be determined. And by the issuance of that declaratory relief, everybody's pension benefits changed. And the court went out of its way to note that the calculations were rote math as a result of the declaratory relief, and then said, but to the extent that we're wrong, and we may not know the full implications of this ruling, when this goes back down to the district court, if the damages are not rote calculations, and there may be instances where somebody wants to prove up their own measure of benefits, then the court needs to reconsider whether that can be done in a B2 class and whether it needs to be re-characterized in a B3 class. Here, the injunction that is obtained in the settlement agreement relates to their future conduct. They are changing the way they do things and issuing additional rights going forward. There are no damages that flow from the issuance of that injunctive relief. So they're entirely separate, which is necessarily the fact that the injunction isn't even authorized by the agreement. It's an additional add-on in negotiation. You're sort of resisting the idea that incidental means non-individualized. Do you think a damage award could both be non-individualized but still not be incidental? I'm lost in the double negative. Yeah, I know. Me too. But I guess what I'm saying is the idea is that just for the sake of argument for this moment, you could maybe concede, even if I thought, look, these look like classified. The statutory damages in this case, they look pretty classified to me. They do not look individualized to me. You might say, well, OK, Your Honor, they're not individualized, but they're still not incidental because they don't flow directly from the injunctive relief. That is correct. I think that is the additional limitation that Dukes put on this area of the law. I think that was the advancement that Dukes made. I would also note that this court has twice decided that the statutory damages are individualized. In the Stillmock and the Souter case, they did note that it was individualized and noted that they could be differing amounts. I still think that there is this concept of whether it's an individualized right to a money judgment. And the fact that my client could go out and get their own money judgment in their name makes this an individualized right as opposed to a collective right. And I do think that that's what the Dukes, the dichotomy that the Dukes court was trying to draw. I also want to address the notion that the fact that this can be treated differently because it's a settlement class, I think is wholly erroneous. One, I think the Emkin decision puts that to bed. Due process rights are heightened in the settlement context. But to the extent that this is different in a litigation class, plaintiff's counsel argued that in the litigation context, the defendant has the right to object. And so what he's really arguing is that the defendant has more rights than absent class members to object to the pursuit of injunctive relief. And I don't think that's right at all. The parties to litigation have equal rights to make those objections. And absent class members have the right to say, I don't want that injunctive relief in exchange for my property claim. I want to pursue my claim for damages.  And it may very well be that many class members want the injunction, but that's their personal choice to make the decision. And I think the Dukes, Shutz, Thai Court title cases all make that abundantly clear. And I would also note that, contrary to defense counsel's perspective, the Brown versus Thai Court title case out of the Ninth Circuit, I think, did take that next step that Dukes marginally left open and said, no money damages. And that is their refusal to apply res judicata to the release of money damage claims there is what creates the chaos here. There will be claims that follow from this decision, this case, if this court doesn't reverse and people in Ninth Circuit will be treated differently than people in the Fourth Circuit. Thank you. Thank you, Mr. Paul. We'll come down in Greek Council and call our next case.
judges: Robert B. King, Pamela A. Harris, George Jarrod Hazel